UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                                        Plaintiff,

                                                                Case #11-CR-6157-FPG

v.                                                              DECISION AND ORDER

STEVEN P. RACE and TIMOTHY M. RACE,

                                        Defendants.

---

By text order dated September 13, 2011, this case was referred to United States Magistrate Judge Marian W. Payson, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B). ECF No. 19. The five count indictment in this case charges both Steven Race ("Steven") and Timothy Race ("Timothy") with conspiracy to commit controlled substances offenses, in violation of 21 U.S.C. § 846; possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); unlawfully manufacturing marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); use of a premises to manufacture marijuana, in violation of 21 U.S.C. § 856(a)(1); and possession of a firearm in furtherance of drug trafficking crimes, in violation of 18 §§ U.S.C. 924(c)(1). ECF No. 18.

Timothy and Steven's Motions seek to suppress tangible evidence seized from their residence at 203 Lake Road, Webster, New York on or about February 4, 2011. ECF Nos. 75, 97, 106, 123. Steven also seeks to suppress statements that he made to law enforcement shortly after the search, ECF Nos. 97, 123, and Timothy similarly seeks to suppress statements he made to law enforcement on February 6, 2011, ECF No. 106. Magistrate Judge Payson held suppression hearings on June 21, 2013, March 24, 2014 and April 25, 2014 (ECF Nos. 84, 118,

120), and after receiving further submissions from the parties, Magistrate Judge Payson issued a comprehensive Report and Recommendation on February 11, 2015. ECF No. 131. As relevant here, Magistrate Judge Payson recommends granting Steven and Timothy's motion to suppress the tangible evidence that was seized from 203 Lake Road, recommends granting Steven's motion to suppress statements, and recommends denying Timothy's motion to suppress statements as a result of a Fifth Amendment violation. *Id.* After receiving extensions of time, both the government and Steven filed Objections to Magistrate Judge Payson's Report and Recommendation. ECF Nos. 147, 148. No objections were filed on behalf of Timothy.

Since the parties have filed Objections, this Court must conduct a *de novo* review as to those portions of the Report and Recommendation to which objections have been made. *See* 28 U.S.C. § 636(b)(1)(C). In doing so, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* As part of this review, the Court has considered all of the parties' submissions to date, as well as the transcripts of the suppression hearings. Based upon that *de novo* review, I find no basis to alter, modify, or reject Magistrate Judge Payson's Report and Recommendation.

The relevant facts are largely undisputed. On the evening of February 4, 2011, Webster Police Officer Michael Burns was on duty and had a high school senior riding along with him as part of a high school program. Late that night, Burns responded to a 911 call for a potential domestic violence incident at 203 Lake Road. Burns was made aware that the 911 call was made by Carolyn Race ("Carolyn"), who reported that her son was at 203 Lake Road and that an argument was occurring with another individual. Burns testified that he was aware that Carolyn had called 911 on multiple prior occasions to have officers check on the welfare of her sons at 203 Lake Road, and that these prior calls often resulted in the responding officer finding no

problem at the residence.  Indeed, Burns testified that Carolyn "might be less than stable with respect to the calls that she made."  ECF No. 84, at 156-57.

After being dispatched to 203 Lake Road, Burns received another dispatch regarding a female hitchhiker on a separate street.  Burns testified that the hitchhiking report was more urgent than Carolyn's call regarding an argument at 203 Lake Road.  Burns responded to the hitchhiking call first, and about four to six minutes later, he responded to 203 Lake Road.  Burns did not activate his emergency lights or siren to get to 203 Lake Road, arriving at approximately 11:25 p.m.  Once at the location, Burns exited his police car and approached the residence.  Burns had the high school senior accompany him to the residence, despite a Webster Police Department Order that directs civilian riders to remain in the police car while officers respond to this type of a 911 call.

While walking up to the residence, Burns followed footprints in the beaten path of the snow, and as he passed a closed window, he heard two voices speaking in a conversational tone.  Walking up to the back door, Burns smelled marijuana, and heard voices inside the residence, which again, sounded conversational.  Burns banged on the door, and the house went silent.  When he rang the doorbell and announced he was a police officer, Burns heard fast-paced footsteps in the house.  Shortly thereafter, Steven opened the interior door to the house, and Burns was overwhelmed with the smell of marijuana.  Burns told Steven that he was there to investigate a domestic violence call, and Steven told the officer that everything was fine.  Upon learning that Carolyn placed the 911 call, Steven told Burns that Carolyn was his mother, and that her calls were harassment.  In response to a question, Steven told Burns that no one else was inside the home.  Burns then asked Steven for permission to enter the residence to investigate, and Steven refused, telling Burns that he could not enter the residence.

Nevertheless, Burns entered the residence with his high school ride-along student behind him, where he observed marijuana on the kitchen table. Other officers arrived on scene, and the residence and its occupants were secured. Three individuals were removed from the residence, including Steven. Burns took Steven to his patrol car, and read him the *Miranda* warnings from his memory as they walked. They both entered Burns' patrol car, where Steven waived his rights and agreed to speak with Burns. Burns then transported Steven to the police station, where he later gave a statement.

The government's Objections reiterate their belief that law enforcement's warrantless entry into 203 Lake Road on February 4, 2011 was justified by one of two exceptions to the warrant requirement: either the need to render emergency aid, or to prevent the destruction of evidence.

It is a "basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quotation and citation omitted). However, the ultimate test under the Fourth Amendment is "reasonableness," and as such, the Supreme Court has held that the warrant requirement is subject to certain exceptions.

One such exception is the emergency aid doctrine, which permits "law enforcement officers [to] enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006). The test is purely objective, and is based on the "totality of the circumstances confronting law enforcement agents in the particular case." *United States v. Simmons*, 661 F.3d 151, 157 (2d Cir. 2011) (internal quotation marks omitted). Under this test, the core inquiry is "whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer, to believe that there was an urgent need to render aid or take

action." *Id.* Put another way, "the essential question in determining whether exigent circumstances justified a warrantless entry is whether law enforcement agents were confronted by an 'urgent need' to render aid or 'take action.'" *Anthony v. City of New York*, 339 F.3d 129, 135 (2d Cir. 2003) (citations omitted).

Magistrate Judge Payson's Report and Recommendation fully recounts why the emergency aid doctrine does not justify the warrantless entry in this case. The key facts, when viewed objectively, reveal that after receiving Carolyn's 911 call, Burns did not immediately respond to 203 Lake Road, and instead, he first handled a call regarding a hitchhiker. After spending four to six minutes on that incident, he then proceeded to 203 Lake Road, without activating his emergency lights or siren. Carolyn's 911 call provided little detail to the officers, and upon arrival, Burns witnessed nothing that would support the allegation of a domestic incident. To the contrary, the only voices he heard were of a conversational nature, and Burns did not observe anything that would provide a reasonable basis to conclude that any occupant of 203 Lake Road was in need of emergency assistance. Indeed, Burns' decision to bring a high school ride-along student to the door of the house while responding to this 911 call – from a caller who Burns' acknowledges has been less than reliable – undercuts the argument that law enforcement believed they were encountering an emergency situation that required immediate entry into the residence. For these reasons, and as detailed in Magistrate Judge Payson's Report and Recommendation, the government has failed to establish that Burns' warrantless entry was justified under the emergency aid doctrine.

The government also argues that the warrantless entry upon 203 Lake Road was justified to prevent the destruction of evidence. While "the need to prevent the imminent destruction of evidence has long been recognized as a sufficient justification for a warrantless search," *Kentucky v. King*, --- U.S. ----, 131 S. Ct. 1849, 1856 (2011), to justify such an entry, the

government bears "a heavy burden" in establishing the need for the warrantless entry. *Welsh v. Wisconsin*, 466 U.S. 740, 740-41 (1984).

In determining whether exigent circumstances justified a warrantless entry, courts consider the totality of the circumstances and factors such as "(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect 'is reasonably believed to be armed'; (3) 'a clear showing of probable cause ... to believe that the suspect committed the crime'; (4) 'strong reason to believe that the suspect is in the premises being entered'; (5) 'a likelihood that the suspect will escape if not swiftly apprehended'; and (6) the peaceful circumstances of the entry." *United States v. MacDonald*, 916 F.2d 766, 769-70 (2d Cir. 1990). These factors are not exhaustive but rather illustrative, and the presence or absence of any one factor is not conclusive. *Id.*

The only evidence present in this record to suggest that evidence was about to be destroyed is (1) the smell of marijuana, (2) the sound of running feet inside the residence, and (3) the false statement by Steven that he was home alone. Given the "heavy burden" faced by the government, I am unable to conclude that the warrantless entry to prevent the destruction of evidence was justified under these circumstances.

The government's Objections argue that "the potential offense, that of manufacturing marijuana is plainly a serious offense." ECF No. 148, at 15. While I agree that manufacturing marijuana is a serious offense, the distinguishing factor here is that law enforcement had no prior information or basis to believe that narcotics manufacturing or trafficking, as opposed to the simple possession of marijuana, was occurring at 203 Lake Road. True, the police smelled marijuana at 203 Lake Road[1], but as Magistrate Judge Payson pointed out, there is no evidence in the record upon which to conclude that there was any evidence of drug manufacturing or

---

[1] Steven objects to this finding by Magistrate Judge Payson, but I need not address it, since it would not alter my decision regarding suppression.

trafficking – a serious felony – as opposed to the mere use of a small amount of marijuana, which is not a serious felony, since in New York, "the possession and use of marijuana (not in public), with an aggregate weight of less than 25 grams, has been decriminalized" and is punishable by a fine. *United States v. Fareed*, No. 01-CR-19E, 2001 WL 1432285, at *4 (W.D.N.Y. Nov 6. 2001).

In short, I agree with Magistrate Judge Payson that the smell of an unquantifiable amount of marijuana, even coupled with the sound of running feet and a false statement, without more, does not provide an objective basis to believe that the destruction of evidence was imminent. As a result, the warrantless entry was not justified, and the evidence recovered from 203 Lake Road must be suppressed.

Finally, the search warrant that was obtained by Officer Burns for 203 Lake Road on the day after the warrantless entry cannot save the evidence originally discovered through the events of February 4, 2011. The affidavit presented to Webster Town Justice David T. Corretore describes the facts previously recounted: that the Webster Police Department received a 911 call for a domestic incident at 203 Lake Road, that upon approaching the house the officer smelled marijuana, he knocked on the door, heard running, and then encountered Steven, who said that no one else was home. Burns then handcuffed Steven, and conducted a sweep of the residence with other officers, during which he saw marijuana in the kitchen, and in the lower level of the home. There are no facts in the application that, after removing the tainted information, would provide probable cause to support the issuance of a search warrant. In addition, as Magistrate Judge Payson pointed out, the government did not advance the independent source doctrine in the proceedings before her, and as a result, they have failed to establish that (1) the warrant was supported by probable cause derived from sources independent of the illegal entry, and (2) that the decision to seek a search warrant was not prompted by information learned through the

illegal entry. *See United States v. Johnson*, 994 F.2d 980, 987 (2d Cir. 1993). The government's Objections to the Report and Recommendation simply argue that the warrant, even without the illegal observations, is still supported by probable cause. Of course, what is missing is any argument to establish that such probable cause was derived from independent sources, and was not prompted by the illegally learned information. Since the government has failed to carry its burden under the independent source doctrine, the subsequently obtained search warrant for 203 Lake Road cannot save the illegally obtained evidence.

Magistrate Judge Payson's Report and Recommendation also recommended that (1) Steven's statements to law enforcement be suppressed, finding that they were not sufficiently attenuated from the illegal entry into 203 Lake Road, and (2) that Timothy's statements to law enforcement on February 6, 2011 were made after a knowing and voluntary waiver of his *Miranda* rights. Because no party has objected to those determinations, this Court is not required to conduct a *de novo* review of those portions of the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").

For all of the foregoing reasons, the Court accepts and adopts the Report and Recommendation filed by United States Magistrate Judge Marian W. Payson (ECF No. 131) in its entirety. The Defendants' motions to suppress physical evidence recovered on or about February 4, 2011 from 203 Lake Road (ECF Nos. 75, 97, 106, 123) are GRANTED; Steven's motions to suppress statements made on the morning of February 5, 2011 (ECF Nos. 97, 123) are GRANTED; and Timothy's motion to suppress statements as a result of a Fifth Amendment violation (ECF No. 106) is DENIED. The parties are reminded of Magistrate Judge Payson's

prior Order (ECF No. 149), directing them to contact her chambers if they wish to pursue further

proceedings regarding the issue of whether Timothy's statements were sufficiently attenuated.


IT IS SO ORDERED.

DATED:        Rochester, New York
              August 5, 2015


HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court